**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

SHEREE J.,

                    Plaintiff,

v.

KILOLO KIJAKAZI,
Acting Commissioner of Social
Security,

                    Defendant.

1:21-cv-05477-NLH

**OPINION**

---

**APPEARANCES:**

SAMUEL FISHMAN, ESQ
CHERMOL & FISHMAN, LLC
11450 BUSTLETON AVENUE
PHILADELPHIA, PA 19116

     *On behalf of Plaintiff*

RACHAEL A. HONIG
ACTING UNITED STATES ATTORNEY
NAOMI MENDELSOHN
UNITED STATES ATTORNEY
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL, REGION III
P.O. BOX 41777
PHILADELPHIA, PA 19101

     *On behalf of Defendant*

**HILLMAN**, District Judge

     This matter comes before the Court under 42 U.S.C. §

405(g), whereby Sheree J. ("Plaintiff") seeks judicial review of

a final, adverse decision of the Commissioner of Social Security

("Defendant").  Plaintiff has exhausted all administrative remedies and appeals several issues to this Court.  Plaintiff disagrees with how the Administrative Law Judge ("ALJ") came to an unfavorable determination on February 13, 2020.  Plaintiff argues that the ALJ improperly substituted her lay opinion rather than relying on the medical records, failed to include mental health limitations in the dispositive hypothetical question of residual functional capacity ("RFC"), that the ALJ's multiple errors and inconsistencies within her decision prevents fair judicial review, and that Plaintiff's visual and physical impairments were not properly considered or accommodated by the ALJ.  (ECF No. 11 at 1).

Finally, Plaintiff raises a constitutional question: whether the ALJ could render a decision at all in this case where the appointment of the Agency Commissioner was found to be in violation of the Separation of Powers Clause.  (Id.).  For the reasons stated below, this Court will affirm the Commissioner's decision, and finds that Plaintiff lacks standing to bring her Constitutional claim.

## I.   BACKGROUND AND PROCEDURAL HISTORY

On January 11, 2018, Plaintiff protectively filed an application for Disability Insurance Benefits on January 24, 2018.  (Id. at 2).  Plaintiff alleged disability beginning August 29, 2017, contending she could no longer work at her past

relevant work as an office manager because of her impairments of glaucoma, blind right eye, depression, anxiety, agoraphobia, sciatic nerve damage, and chronic right hip pain.  (Id. at 3). Plaintiff appeared at a hearing along with a vocational witness before the ALJ on December 3, 2019.  (Id. at 2).  The ALJ issued an unfavorable decision on February 13, 2020.  (Id.).  The Appeals Council denied Plaintiff's request for review.  (Id.). Plaintiff brings this civil action for review of the Commissioner's decision and consideration of her constitutional claim.  (Id.).

## II.  DISCUSSION

### A.   Standard of Review

Under 42 U.S.C. § 405(g), Congress provides for judicial review of the Commissioner's decision to deny a complainant's application for social security benefits.  Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).  Substantial evidence means more than "a mere scintilla."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)).  It means "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." Id.   The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable.   See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality.   See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984).   "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).   The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections."   Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000). Similarly, an ALJ must also consider and weigh all the non-medical evidence before him.   Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the
Commissioner's reasoning is indeed essential to a meaningful
court review:

> Unless the [Commissioner] has analyzed all
> evidence and has sufficiently explained the
> weight he has given to obviously probative
> exhibits, to say that his decision is
> supported by substantial evidence approaches
> an abdication of the court's duty to
> scrutinize the record as a whole to
> determine whether the conclusions reached
> are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (superseded
in non-pertinent part by statute with regards to ALJs no longer
being bound by findings made by State agency medical or
psychological consultants); see also 20 C.F.R. §
404.1527(e)(2)(i); Hockenberry v. Colvin, 15-00793, 2016 U.S.
Dist. LEXIS 173512, at *38-39 (M.D. Pa. Sept. 12, 2016).
Although an ALJ, as the factfinder, must consider and evaluate
the medical evidence presented, Fargnoli, 247 F.3d at 42,
"[t]here is no requirement that the ALJ discuss in its opinion
every tidbit of evidence included in the record," Hur v.
Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004).  In terms of
judicial review, a district court is not "empowered to weigh the
evidence or substitute its conclusions for those of the fact-
finder." Williams, 970 F.2d at 1182.  However, apart from the
substantial evidence inquiry, a reviewing court is entitled to
satisfy itself that the Commissioner arrived at his decision by

application of the proper legal standards.  Sykes, 228 F.3d at
262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983);
Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

**B.   Standard for SSI**

The Social Security Act defines "disability" for purposes
of an entitlement to a period of disability and disability
insurance benefits as the inability to engage in any substantial
gainful activity by reason of any medically determinable
physical or mental impairment which can be expected to result in
death, or which has lasted or can be expected to last for a
continuous period of not less than 12 months.  See 42 U.S.C. §
1382c(a)(3)(A).  Under this definition, a plaintiff qualifies as
disabled only if her physical or mental impairments are of such
severity that she is not only unable to perform her past
relevant work, but cannot, given her age, education, and work
experience, engage in any other type of substantial gainful work
which exists in the national economy, regardless of whether such
work exists in the immediate area in which she lives, or whether
a specific job vacancy exists for her, or whether she would be
hired if she applied for work.  42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated regulations for
determining disability that require application of a five-step
sequential analysis.  See 20 C.F.R. § 404.1520.  This five-step
process is summarized as follows:

1.   If the claimant currently is engaged in substantial gainful employment, she will be found "not disabled."

2.   If the claimant does not suffer from a "severe impairment," she will be found "not disabled."

3.   If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 <u>and</u> has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

4.   If the claimant can still perform work she has done in the past ("past relevant work") despite the severe impairment, she will be found "not disabled."

5.   Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not she is capable of performing other work which exists in the national economy.  If she is incapable, she will be found "disabled."  If she is capable, she will be found "not disabled."

20 C.F.R. § 404.1520(b)-(f).  Entitlement to benefits is therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof. See <u>Wallace v. Secretary of Health & Human Servs.</u>, 722 F.2d 1150, 1153 (3d Cir. 1983).  In the first four steps of the analysis, the burden is on the claimant to prove every element of her claim by a preponderance of the evidence.  See <u>id.</u>  In the final step, the Commissioner bears the burden of proving that work is available for the Plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden

shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see also Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

### C.   Analysis

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since Plaintiff's alleged onset date of August 29, 2017.  (EFC No. 8 at 19 of 547).  The ALJ acknowledged that Plaintiff had been working after the application date but that the work activity did not rise to the level of substantial gainful activity.  (Id.).  At step two, the ALJ found that Plaintiff's severe impairments of glaucoma and cataracts significantly limited Plaintiff's ability to perform basic work activities.  (Id. at 20 of 547).  The ALJ also determined that Plaintiff had several non-severe impairments: obesity and degenerative disc disease of the lumbar spine. (Id.).  The ALJ also found that Plaintiff's mental impairments of generalized anxiety and major depressive disorder were non-severe.  (Id.).  At step three, the ALJ determined that Plaintiff's severe impairments or her severe impairments in combination with her other impairments did not meet or medically equal the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).  (Id. at 22 of 547).

The ALJ next determined that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels,[1] but with certain non-exertional limitations in that she should be restricted from work that required the operation of a commercial motor vehicle, from work at unprotected heights, from work with hazardous machinery, and from work on any tasks that require excellent depth perception. (Id. at 23 of 547).  At step four, the ALJ determined that Plaintiff was able to perform her past relevant work as a "Manager," because this type of work did not require the performance of the excluded work-related activities the ALJ outlined in her assessment of Plaintiff's residual functional capacity.  (Id. at 25, 26 of 547).  The ALJ therefore concluded that Plaintiff was not disabled.

Plaintiff argues that the ALJ erred in her decision for several reasons.  Plaintiff alleges that the ALJ improperly substituted her lay opinion for that of the medical sources of record concerning her mental conditions, that the ALJ failed to include the mental limitations she found credible in the dispositive hypothetical question or in her residual functional capacity finding, that the ALJ made multiple errors in

---

[1] 20 C.F.R. § 404.1567 ("Physical exertion requirements.  To determine the physical exertion requirements of work in the national economy, we classify jobs as sedentary, light, medium, heavy, and very heavy.").

evaluating Plaintiff's physical impairments, that the ALJ misrepresented the visual impairment evidence of record and therefore failed to accommodate her, that the ALJ's decisions were internally inconsistent and "incompatible with fair judicial review," and that a Constitutional violation occurred due to the ALJ and the Appeals Council's delegated authority being tainted by the Agency Commissioner who sat in violation of the Separation of Powers Clause.  (ECF No. 11 at 1).  Each issue will be addressed in turn.

### 1.   The ALJ's Decision

Plaintiff alleges that the ALJ made multiple errors in evaluating the Plaintiff's physical impairments.  When determining whether a claimant is entitled to benefits under the Act, the ALJ has an obligation to review the medical evidence, and in instances where conflicting evidence exists, make choices between conflicting medical evidence.  Williams at 1187 (citing Cotter, 642 F.2d at 705).  The fact finder is entitled to make choices and draw conclusions from conflicting medical source evidence, and here there is sufficient medical source evidence which supports the ALJ's conclusion.

Focusing on Plaintiff's back and hip pain, the ALJ cited to several medical sources which indicated some impairment related to Plaintiff's spine at varying degrees of quality.  (ECF No. 8 at 20 of 547).  While Plaintiff argues that the ALJ

mischaracterized the main medical source that focused on her spine, the conclusions of that same report indicate that the impairment was not severe: "She would be able to walk and stand for a reasonable amount of time with needed breaks.  She would be able to sit for a reasonable amount [of] time with needed breaks."  (Id. at 463 out of 547).  In the same report, Plaintiff was able to walk with a normal physiologic gate.  (Id.).  The additional treatment records show only mild continuing sciatic symptoms.  (Id. at 490-492 of 547).

Additionally, the ALJ also specifically considered Plaintiff's subjective allegations of her pain in her final determination and asked Plaintiff about her back pain during her hearing, which Plaintiff's attorney expanded upon.  (Id. at 25, 42, 50-52 of 547).  The fact that there is some "evidence in the record that supports a contrary conclusion does not undermine the Commissioner's decision so long as the record provides substantial support for that decision." Sassone v. Comm'r of Soc. Sec., 165 Fed. App'x 954, 955-56, (3d Cir. 2006).  This Court's mandate is limited to reviewing whether there was "more than a mere scintilla" of evidence to support the ALJ's findings, which is what the Court finds here with regards to the ALJ's findings of non-severity concerning Plaintiff's impairments of her hip and lumbar spine.  (ECF No. 8 at 20-22 of 547).  The Court is not empowered to substitute its reasoning

for that of the ALJ when the ALJ's opinion is supported by evidence in the record.  Williams, 970 F.2d at 1182.

Plaintiff also alleges that the ALJ improperly substituted her lay opinion over that of the mental health medical sources, specifically objecting to the ALJ's determination that the consultative examination of psychologist Lawrence Mintzer, Ph.D. on April 23, 2018, and the subsequent review of his findings, were unpersuasive.  (ECF No. 11 at 4; ECF No. 8 at 22 of 547). "An ALJ is free to choose one medical opinion over another where the ALJ considers all of the evidence and gives some reason for discounting the evidence he rejects." Maloney v. Berryhill, No. 15-981, 2017 U.S. Dist. LEXIS 44945, at *29 (Del. D. C. Mar. 27, 2017) (citing Diaz v. Commissioner of Soc. Sec., 577 F.3d 500, 505-06 (3d Cir. 2009) and Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)).  The record has multiple sources that reflect Plaintiff's alleged mental impairments, but these sources present some conflicting conclusions.  Dr. Mintzer, for example, diagnosed Plaintiff with major depressive disorder as "recurrent and severe" after describing plaintiff as "a bit depressed" in his April 23, 2018 evaluation.  (ECF No. 8 at 447 of 547).  His underlying functional assessment also conflicted with his final conclusion: Dr. Mintzer described Plaintiff being able to maintain her hygiene, go to church, completing half of the cooking and grocery shopping; he described her demeanor as

oriented, with normal speech; he described her thought processes as goal-directed, concentration "fairly good", with good memory and impulse control, and that she "seems to be a reliable informant." (Id. at 447-49 of 547).

Dr. Mintzer did note symptoms of Plaintiff's mental impairments, such as her fear of crowds and her difficulty getting out of bed, but these symptoms did not prevent Plaintiff from attending church and keeping up with her appearance despite the fact that these tasks do not give her joy as they once did. (Id. at 448 of 547). Dr. Mintzer noted that Plaintiff has been in consistent outpatient treatment for her mental impairments, and those subsequent therapy notes from her treating psychiatrist and psychotherapist throughout 2019 reflected that Plaintiff was consistently stable in her mental state despite having ebbs and flows in depressive behaviors. (Id. at 493-547 out of 547).

In the face of the medical evidence, the ALJ did exactly what the Third Circuit has held ALJs are obligated to do: the ALJ compared the details of this report to the wider body of treatment notes that suggested that the underlying behaviors critical to a disability analysis such as memory, attention, concentration, and coherence of thought, which were consistently reported as being "good" and "stable" at various points by the therapists that met with Plaintiff over several years, rather

than focusing on the doctor's choice of words.  See Tucker v. Saul, 2020 (D.N.J. Oct. 23, 2020) (citing Masher v. Astrue, 354 F. App'x 623, 628 (3d Cir. 2009) ("the Third Circuit also explained that '[r]ather than focusing on the doctor's choice of words [such as 'disabled' in the Brownawell case], the ALJ was obligated to examine the substantive evidence on which the physician's conclusion was based."")); see also (ECF No. 8 at 21-22 of 547).  Thus, the ALJ was not substituting her "lay opinion" when she found Dr. Mintzer's report as unpersuasive, (ECF No. 8 at 22, 25 of 547) nor did she provide insufficient explanation of her reasoning as to preclude meaningful judicial review.  She simply discounted Dr. Mintzer's conclusion of "moderate to severe" impairment after considering other medical sources, which showed a more consistent and supportable view of Plaintiff's true mental impairments over time, while properly noting Dr. Mintzer's conclusions regarding the four functional areas the ALJ must assess to establish the degree of mental impairment.  (ECF No. 8 at 20-21 of 547).

Ultimately, the ALJ concluded that Plaintiff's mental and physical impairments related to her hip and spine, were non-severe, controlled by medication, and required no aggressive treatment.  (ECF No. 8 at 20 of 547).  This conclusion is supportable by the records presented and is rational in light of the entirety of the record.  Hernandez v. Comm'r of Soc. Sec.,

89 F. App'x 771, 773 (3d Cir. 2004) ("We must determine whether, in light of the entirety of the record, the Commissioner's conclusions are rational.").

Plaintiff further argues that the ALJ failed to include mental limitations in the residual functional capacity finding and that this requires remand. (ECF No. 11 at 1). The Court finds that the RFC assessment takes into consideration all of Plaintiff's impairments:

> Nevertheless, in spite of the claimant's multiple unremarkable physical evaluations, taking into account the combined effect of her physical impairments and considering her subjective allegations along with a history of an ocular disorder as well as cataract surgery around April 2018, I have limited the claimant to never working at unprotected heights, never working with hazardous machinery, and never operating a commercial motor vehicle. In addition, due to the claimant's eye disorder, she can perform no tasks that require excellent depth perception.

(ECF No. 8 at 25 of 547). Although the ALJ does not explicitly mention Plaintiff's non-severe mental impairments in the paragraph that specifically outlines the residual functional capacity, "the ALJ is not required to specify each impairment's impact on the overall RFC determination." Cox v. Comm'r of Soc. Sec., No. 17-cv-08658, 2018 WL 6499866, at *6 (D.N.J. Dec. 10, 2018) (citing Garrett v. Commissioner of Social Sec., 274 F. App'x 159, 163 (3d Cir. 2008)). The ALJ spent several paragraphs explicitly discussing the various medical sources she considered regarding Plaintiff's mental impairments and

"thoroughly considered these non[-]severe impairments, along with the aforementioned severe impairments, in determining the claimant's residual functional capacity."  (ECF No. 8 at 22 of 547).  Thus, this Court is satisfied that Plaintiff's non-severe mental impairments were considered by the ALJ in determining the Plaintiff's residual functional capacity.

Plaintiff also argues that her severe visual impairment was not adequately accommodated, and that the ALJ misrepresented the evidence of record in her findings.  Plaintiff argues that the ALJ disregarded all of the opinions of the reviewing physicians affiliated with the Defendant without support.  (ECF No. 11 at 30).  The ALJ provided an overview of medical sources from the Defendant and stated that:

> Upon reconsideration, Algernon Phillips, M.D., Arthur Pirone, and David Clay, Ph.D. agreed with Drs. Fairweather, Strauchler, and Encarnacion (B3A).  These opinions were only based on a review of the medical record, which did not even include subsequent physical evaluations and mental examinations in 2019.  As detailed above, the physical the physical evaluations and mental status examinations showed that the claimant was physically and mentally stable.  For instance, the claimant denied any musculoskeletal in June 2018 or feeling depressed or moody in December 2019 (see B9F at 2; B14F at 2-10).  Overall these opinions are not supported and consistent with the totality of medical evidence, and thus, they are not persuasive.

(ECF No. 8 at 25 of 547).  As seen from the above, the ALJ did not simply dispose of the Defendant's own doctor's reports without explanation as claimed by Plaintiff.  (ECF No. 11 at

30).  While the ALJ is entitled to find certain sources to be
persuasive or unpersuasive, here, the ALJ accounts for
Plaintiff's severe visual impairments by directly utilizing the
restrictions articulated by Dr. Strauchler: by restricting her
from working at unprotected heights, never working with
hazardous machinery, never operating a commercial motor vehicle,
and never performing tasks that require excellent depth
perception, all of which require unhampered visual perception.
(ECF No. 8 at 25 of 547).  These restrictions were present in
Plaintiff's residual functional capacity and were also
specifically addressed to the vocational expert at the hearing.
(ECF No. 8 at 58 of 547).  The ALJ took care to question the
Plaintiff about her visual impairments in the hearing as well.
(ECF No. 8 at 40-42, 53 of 547).  Finally, Plaintiff conceded
that Dr. Strauchler did not find that Plaintiff's conditions met
any of the listed impairments.  (ECF No. 11 at 30).  There is
sufficient support to show that the ALJ considered and
accommodated Plaintiff's visual impairments.

Similarly, Plaintiff alleges that the ALJ failed to include
mental limitations in the dispositive hypothetical questions
given to the vocational expert during Plaintiff's hearing.  (Id.
at 1).  The standard of review is similarly deferential to the
ALJ in that ALJ is not required to state to the vocational
expert "every impairment alleged by a claimant."  Rutherford v.

17

Barnhart, 399 F.3d 546, 554 (3d Cir. 2005) (internal citations
omitted).  The "hypotheticals posed must accurately portray the
claimant's impairments and [] the expert must be given an
opportunity to evaluate those impairments as contained in the
record."  Id. (internal quotations and citations omitted).  In
this matter, the ALJ posed the following hypotheticals.

    First, the vocational expert was asked to consider a
hypothetical individual of claimant's age and education, with
the past job of an office manager[2] taking into consideration that
the individual did not have any skill or exertional limitations,
except for the exceptions the ALJ provided in Plaintiff's
residual functional capacity: a person who can never work at
unprotected heights, never with hazardous machinery, never
operate a commercial vehicle, and a person who cannot do tasks
that would require excellent depth perception.  (ECF No. 8 at 58
of 547).

    Next, the ALJ reiterated the same limitations as the
previous hypothetical, with the additional limitation that the
hypothetical person was limited to light work.  (Id. at 59 of
547).  An additional skill limitation was added, limiting the
hypothetical person to performing simple, routine tasks.  (Id.).

---

[2] The vocational expert found that the past job Plaintiff engaged
in was an "office manager" with a SPV of 7, skilled, and
performed as sedentary.  (ECF No. 8 at 58 of 547).

Finally, the ALJ asked the vocational expert what the employer tolerance for off-task and absenteeism for this role.  (Id.).

The vocational expert noted that the only restriction that would prohibit the hypothetical person from performing the office manager role would be the limit the role to simple, routine tasks, which would be "unskilled" work.  (Id.). Additionally, the vocational expert stated that this testimony was consistent with the DOT except for the "off task and absenteeism [elements].  These depended on the DOT and that is based on my experience at temp agencies and rehab agencies." (Id. at 59-60 of 547).  During the hearing, the ALJ had Plaintiff describe her former job at the banquet hall for the vocational expert, which asked additional questions of Plaintiff to clarify her former duties.  (Id. at 54-57 of 547).

Here, the expert here was given an opportunity to evaluate Plaintiff's impairments as posed in these hypotheticals.  The question is whether the above hypotheticals accurately portrayed the claimant's impairments.  The first hypothetical expressly includes the restrictions due to Plaintiff's severe visual impairment as assessed by Dr. Strauchler.  (Id. at 25 of 547). The next iteration of limitations restricted the hypothetical person to light work, which implicitly incorporates Plaintiff's non-severe but persistent back and hip pain.  Although none of the Agency medical sources found the need for specific

19

exertional limitations for Plaintiff's back and hip pain, light work incorporates Dr. Sarmiento's conclusion that "[s]he would be able to walk and stand [and sit] for a reasonable amount of time with needed breaks."  (Id. at 463 of 547).

Finally, the last hypothetical conditions posed to the vocational expert related to concentration, absenteeism, and unskilled work.  (Id. at 59 of 547).  These conditions implicitly incorporate Plaintiff's non-severe mental impairments.  As the ALJ explained while assessing Plaintiff's impairments in her final determination, Plaintiff has the medically determinable mental impairments of generalized anxiety and major depressive disorder.  (Id. at 20).  When assessing the record to ascertain Plaintiff's mental functioning via the "Paragraph B criteria" the ALJ found that Plaintiff had mild limitations.  (Id. at 21).

The ALJ explained that this determination was based on Plaintiff's subjective experience of her symptoms as well as the medical source evidence provided and that, overall, while Plaintiff was experiencing symptoms, she maintained her personal hygiene appropriately; was, for the most part, able to keep her appointments; had undiminished cognition; and was still managing to work part-time at a staffing agency five days per week at four hours per day.  (Id. at 20-22, 24 of 547).  The ALJ did not find Plaintiff to be unskilled, nor did any medical source

20

indicate that Plaintiff's abilities rendered her incapable of skilled work.  Further, the ALJ is not required to pose an alleged impairment or limitation to the vocational expert if the alleged impairment is not included in the RFC determination. Malcolm v. Comm'r of Soc. Sec., No. 16-8646, 2017 WL 5951703 at *19 (D.N.J. Nov. 30, 2017) (citing Schmits v. Astrue, 386 F. App'x 71, 76 (3d Cir. 2010)).  The Court does not find that the ALJ erred in her use of, or her reliance on, the hypotheticals posed to the vocational expert in this matter.

Plaintiff also flags various inconsistencies and errors that dot the ALJ's opinion.  However, these typographical errors and alleged inconsistencies did not impair the Court's ability to provide meaningful judicial review in this case.  The Court must be able to tell from the ALJ's analysis if significant probative evidence was credited, that the explanation of findings includes expression of support and some indication of the evidence that was rejected, and the reasons for discounting it.  Tucker v. Saul, No. 18-cv-13522, 2020 WL 6255420, at * 2 (D.N.J. Oct. 23, 2020) (citing Burnett v. Commissioner of SSA, 220 F.3d 121, 119 (3d Cir. 2000)).  A "sentence or short paragraph would probably suffice" to allow for meaningful judicial review.  Id. (citing Plummer v. Apfel, 186 F.3d 422, 429 (3d. Cir. 1999)).  A particular format in conducting the analysis or use of specific language is not required.  Id.

(citing Jones v. Barnhart, 364 F.3d 501, 505 (3d. Cir. 2004)).

The conclusions drawn by the ALJ were not ambiguous when considering the ALJ's decision as a whole and in light of the record as developed.  The ALJ provided sufficient details for this Court to be able to provide meaningful judicial review for the reasons previously discussed.

Ultimately the Court is bound by the ALJ's findings of fact that are supported by substantial evidence "even if [this Court] would have decided the factual inquiry differently." Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).  "Where evidence in the record is susceptible to more than one rational interpretation, [the Court] must accept the Commissioner's conclusions." Izzo v. Comm'r of Soc. Sec., 186 F. App'x 280, 283 (3d Cir. 2006).  The Court does so here.

### 2.   The Constitutional Question

The Plaintiff alleges that the Social Security proceedings in their entirety were constitutionally defective because of the appointment of Andrew Saul to Commissioner of the Social Security Administration.  The parties agree that 42 U.S.C. § 902(a)(3) violates the separation of powers clause to the extent that it is construed as limiting the President's authority to remove the Commissioner without cause.  (ECF No. 12 at 43).  Plaintiffs argue that because of this violation, the appointed ALJ and the Appeals Council did not have constitutional

authority to render a decision on Plaintiff's case.  (ECF No. 11 at 36-38).

While Plaintiff argues to the contrary, the Supreme Court has already stated that there is no basis to conclude that an appropriately appointed official does not have the authority to carry out the functions of the office, even if his or her position was designed by Congress to impermissibly impinge on the President's right to removal at will.  Collins v. Yellen, 141 S. Ct. 1761, 1787-88, 1788 n.23 (2021)(plurality opinion)("As we have explained, there is no basis for concluding that any head of the FHFA lacked the authority to carry out the functions of his office.").

> The Appointment Clause cases do not help the shareholders either.  These cases also ask whether an officer can lawfully exercise the statutory power of his office at all in light of the rule that an office must be properly appointed before he can legally act as an officer. . . Here, "[a]ll the officers who headed the FHFA during the time in question were properly appointed."  There is thus no barrier to them exercising power in the first instance.

Id. at 1793 (Thomas, J. concurring) (citations omitted).

Similarly, the Court addressed that the idea that the "taint" of the "mere existence" of the offending removal provision flows down through the executive power exercised by the officer was unavailing.  Id. at 1788, 1793 ("[W]e have not held that a misunderstanding about authority results in a constitutional defect where the action was otherwise lawful.").

The plurality opinion addresses the most pressing issue: that there must be an adequate nexus between the unconstitutional provision and the case at bar.  See id. at 1779 ("for purposes of traceability, the relevant inquiry is whether the plaintiffs' injury can be traced to 'allegedly unlawful conduct' of the defendant, not to the provision of the law that is challenged.").  So two do the concurring opinion of Justices Thomas and Kagan: "I write separately because I worry that the Court and the parties have glossed over a fundamental problem with removal-restriction cases such as these: The Government does not necessarily act unlawfully even if a removal restriction is unlawful in the abstract."  Id. at 1789 (Thomas, J. concurring).  Similarly, "[w]hen an agency decision would not capture a President's attention, his removal authority could not make a difference—and so no injunction should issue."  Id. at 1802 (Kagan, J. concurring).  See also Mor v. Kijakazi, No. 21-1730, 2022 2022 WL 73510, at *4-5 (D.N.J. Jan. 6, 2022).

The Court must now consider, then, whether Plaintiff has sufficiently established a concrete injury inflicted by 42 U.S.C. § 902(a)(3) upon Plaintiff through the ALJ's final decision of finding the Plaintiff not disabled and the Appeals Council's denial of review.  Without standing, there is no "case or controversy" to be decided.  Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016).

24

Plaintiff argues that both the ALJ and the Appeals Council have inflicted the harm of unconstitutional proceedings against Plaintiff and the subsequent denial of benefits.  (ECF No. 15 at 23-24).

First, the Third Circuit has already expressly stated that "[n]o statutory authority, (the source of the district court's review) authorizes [district courts] to review the Appeals Council decision to deny review," because the Appeals Council exercises "'certiorari-type jurisdiction,'" and renders an ALJ's decision final under the Social Security Act.  Kwasnik v. Kijakazi, No. 21-08573, 2022 U.S. Dist. LEXIS 116234, at * 30 (D.N.J. Jun. 30, 2022); see also Matthews v. Apfel, 239 F.3d 589, 594 (3d Cir. 2001).  Thus, this Court does not have the authority to examine the Appeals Council's decision.

Second, the Plaintiff fails to establish a causal connection between the harm of the ALJ's decision and the impermissible removal provision.  As discussed above, and as found by other courts, the mere "taint" of the head of an agency does not establish a sufficient nexus for standing.  See Kwasnik v. Kijakazi, No. 21-08573, 2022 U.S. Dist. LEXIS 116234, at *33-34 (D.N.J. Jun. 30, 2022) (citing Andino v. Kijakazi, No. 21-2852, 2022 WL 1135010, at *6-7 (E.D. Pa. April 18, 2022) ("Justice Alito specified in Collins that Seila Law's holding on standing 'does not mean that actions taken by such an officer

25

are void ab initio and must be undone.' . . . [I]t is not
difficult to see that Collins requires Andino to demonstrate a
nexus between the decision denying her disability benefits and
42 U.S.C. § 902(a)(3)."); Mor v. Kijakazi, No. 21-1730, 2022 WL
73510, at *5 (D.N.J. Jan. 7, 2022) ("Plaintiff fails to point to
any connection between the Commissioner's removal under Section
902(a)(3) and the ALJ's decision (or any other action in this
case).  As a result, the requisite nexus is not met, and the
Court denies Plaintiff's appeal on this ground."); see also Ford
v. Kijakazi, No. 21-1432, 2022 WL 1203731, at *6 (E.D. Pa. Apr.
22, 2022) (denying separation of powers claim because plaintiff
failed to show "harm caused by Saul exercising authority he
retained by virtue of the unconstitutional removal clause.").

     As Justice Kagan noted in Collins, for the Court to redress
an injury due to an agency decision made by an agency headed by
a single executive subject to an impermissible for-cause removal
protection, that agency's decision would need to "capture a
President's attention."  Collins, 141 S. Ct. at 1801-02.
Justice Kagan specifically noted that the "mass" of Social
Security Administration decisions would likely not create a harm
that would allow for redress.  Id. ("[O]nly when the President's
inability to fire an agency head affected the complained-of
decision.  Only then is relief needed to restore the plaintiffs

to the position they 'would have occupied in the absence' of the removal problem.").

Plaintiff points to a statement by President Biden which purports to indicate that President Biden wanted to fire Commissioner Saul.  (ECF No. 15 at 37).  Plaintiff points to the below quote in particular to demonstrate that President Biden wanted to fire the Commissioner from the time of the President's inauguration on January 20, 2021:

> Since taking office, Commissioner Saul has undermined and politicized Social Security disability benefits, terminated the agency's telework policy that was utilized by up to 25 percent of the agency's workforce, not repaired the SSA's relationships with relevant Federal employee unions including in the context of COVID-19 workplace safety planning, reduced due process protections for benefits appeals hearings, and taken other actions that run contrary to the mission of the agency and the President's policy agenda.

Id.[3]

First, these harms listed in the news article quote are general and do not show the required concrete, causal harm to establish standing.  To establish standing, "a plaintiff must

---

[3] The Court notes that this quote came from a Washington Post article dated July 11, 2021.  The quote itself, credited to the White House, was not dated within the article.  See Lisa Rein, Biden fires head of Social Security Administration, a Trump holdover who drew the ire of Democrats, WASHINGTON POST, July 11, 2021 at https://www.washingtonpost.com/politics/andrew-saul-social-security-/2021/07/09/c18a34fa-df99-11eb-a501-0e69b5d012e5_story.html.

show that it has suffered 'an injury in fact' that is 'fairly traceable' to the defendant's conduct and would likely be 'redressed by a favorable decision.'" Collins, 141 S. Ct. at 1779 (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)). "[F]or purposes of traceability, the relevant inquiry is whether the plaintiffs' injury can be traced to 'allegedly unlawful conduct' of the defendant, not to the provision of law that is challenged." Id. (quoting Allen v. Wright, 468 U.S. 737, 751 (1984)); see also Kwasnik v. Kijakazi, No. 21-08537, 2022 WL 2358424, at *11 (D.N.J. Jun. 30, 2022).

Plaintiff does not point to a specific legal application, policy, or decision that the ALJ or Appeals Council rendered that had any effect on this case except for the overall denial of benefits, which as explained above was sufficiently supported by the record.  See Johnson v. Kijakazi, No. 21-2372, 2022 U.S. Dist. LEXIS 114766, at *36 (E.D. Pa. Jun. 28, 2022) ("Plaintiff has not identified any new regulations, agency policies or directives Commissioner Saul installed that may have affected her claims.  Plaintiff thus fails to show how or why [the unlawful] removal clause possibly harmed her.") (internal citations omitted).

Second, the timing of this statement from President Biden presents another reason to find against Plaintiff's constitutional claims: the ALJ's decision was rendered under the

Trump Administration, which should not be undone because Collin's "remedial holding limits the damage of the Court's removal jurisprudence.  As the majority explains, its holding ensures that the actions the President supports—which would have gone forward whatever his removal power—will remain in place." Collins, 141 S. Ct. at 1801-02 (Kagan, J. concurring).  The ALJ rendered her decision while former President Trump was still in office, when Commissioner Saul enjoyed the former President's support, thus 42 U.S.C. § 902(a)(3)'s removal restriction would not have impacted the ALJ in any way.  (ECF No. 8 at 14 of 547) (Notice of Unfavorable Decision dated February 13, 2020).

While the White House did ultimately remove Commissioner Saul on July 9, 2021, the Appeals Council's denial for review, even if reviewable (which it is not), was rendered on January 25, 2021.  See supra n.3; (ECF No 8 at 6 of 547).  This Court will not attempt to speculate what specific reasons President Biden could have or would have had to remove Commissioner Saul for, or whether President Biden would have moved for Commissioner Saul's removal within the four days between his inauguration and the Appeals Council's denial in this case. Without a causal connection between an agency decision and Plaintiff's injury this Court cannot find that Plaintiff has demonstrated the nexus necessary to establish standing.

The unconstitutionally of 42 U.S.C. § 902(a)(3)'s removal restriction simply does not void the ALJ's decision in this mine-run case.  The adjudication process and determination by the Social Security Administration remains valid.

**III. Conclusion**

For the reasons expressed above, the decision of the ALJ was supported by substantial evidence and must be affirmed and the unconstitutionally of 42 U.S.C. § 902(a)(3)'s removal restriction had no effect on the ALJ's unfavorable decision.

An accompanying Order will be issued.


Date: August 9, 2022          s/ Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.